```
                   UNITED STATES DISTRICT COURT

                            FOR THE

                 WESTERN DISTRICT OF VIRGINIA

                        ROANOKE DIVISION


* * * * * * * * * * * * * *
UNITED STATES OF AMERICA,    * CRIMINAL NO. 7:22-CR-00012
                             * FEBRUARY 10, 2023  2:08 P.M.
             Plaintiff,      * SENTENCING
                             * VOLUME I OF I
vs.                          *
                             *
SHAKEEM MALIK HUNT,          * Before:
                             * HONORABLE MICHAEL F. URBANSKI
             Defendant.      * UNITED STATES DISTRICT JUDGE
* * * * * * * * * * * * * *  * WESTERN DISTRICT OF VIRGINIA

APPEARANCES:

For the Plaintiff:      MICHAEL COLEMAN ADAMS, ESQUIRE
                        United States Attorney's Office
                        Western District of Virginia
                        310 First Street, S.W., Suite 906
                        Roanoke, VA 24008



For the Defendant:      LLOYD B. BRAFORD, ESQUIRE
                        4806 Pleasant Hill Drive, Suite 202
                        Roanoke, VA 24018




Court Reporter:         Judy K. Webb, RPR
                        210 Franklin Road, S.W., Room 540
                        Roanoke, Virginia 24011
                        (540)857-5100 Ext. 5333

           Proceedings recorded by mechanical stenography.
Transcript produced by computer.
```

U.S.A. v. Hunt - 2/10/2023

1    (Court convened at 2:08 p.m.)

2         THE COURT:  Good afternoon.  Please call the case.

3         THE CLERK:  *This is United States of America versus*

4    *Shakeem Malik Hunt*, Criminal Action 7:22CR12, defendant 1.

5         THE COURT:  This case has been set down today for

6    sentencing.

7         Is the United States ready to proceed?

8         MR. ADAMS:  Yes, Your Honor.

9         THE COURT:  Is the defendant ready to proceed?

10        MR. BRAFORD:  Yes, Your Honor.

11        THE COURT:  Okay.  Let's recap where we are in this

12   case.

13        This case is proceeding on a Rule 11(c)(1)(C) guilty

14   plea to Count One of the indictment.  Count One charged

15   distribution of 50 grams or more of a mixture and substance

16   containing a detectable amount of methamphetamine, a Schedule

17   II controlled substance, in violation of Title 21, United

18   States Code, Section 841(a)(1) and (b)(1)(B).

19        The penalty under 21, United States Code,

20   Section 841(b)(1)(B) is a mandatory minimum sentence of five

21   years in federal prison, up to 40 years in federal prison, up

22   to a $5 million fine, a period of supervised release of at

23   least four years, and a $100 mandatory special assessment.

24        The parties agreed in a Rule 11(c)(1)(C) plea

25   agreement that I accepted at the guilty plea hearing to a

U.S.A. v. Hunt - 2/10/2023

1  sentence in the range of 60 to 87 months.  And as we'll see in

2  a minute, that's below the guidelines.  But the Court finds

3  there is good reason to vary below the guidelines in this case

4  and to accept the Rule 11(c)(1)(C) plea.

5        Let me ask you, Mr. Hunt, do you remain fully

6  satisfied with the advice and representation provided by

7  Mr. Braford, your lawyer, in this case?

8        THE DEFENDANT:  Yes, sir.

9        THE COURT:  Okay.  Each side has had a chance to

10 review the presentence report.  I believe the government

11 raised an objection as to whether or not the defendant

12 qualified for the safety valve, but he clearly does not, and

13 the government -- it looks like the safety valve information

14 was taken out of the presentence report.

15       MR. ADAMS:  That's correct, Your Honor, it is not

16 included in the final presentence report.

17       THE COURT:  Okay.  Any other objections that the

18 government wants to make to the presentence report?

19       MR. ADAMS:  No, Your Honor.

20       THE COURT:  And, Mr. Braford, any objections from the

21 defendant to the presentence report?

22       MR. BRAFORD:  No, Your Honor.

23       THE COURT:  It will be accepted as written.  I

24 appreciate the work done by Mr. Ridgway on this presentence

25 report.

1      Let me go ahead and make guidelines findings then,

2  having accepted the presentence report.  I've already

3  indicated what the statutory penalties are, and so let's go

4  ahead and calculate the advisory sentencing guidelines.

5      Based on the information in the presentence report

6  and on the stipulation on page 3 of the plea agreement, we're

7  at a guidelines level of 30.

8      You know, this is a drug distribution case and the

9  guidelines for drug distribution cases are set based on the

10  amount of the substances involved.  And in this case, the

11  parties have agreed and the presentence report provides for a

12  converted drug weight of between 1,000 and 3,000 kilograms of

13  converted drug weight.

14      In this case, the controlled purchase that took place

15  on, I believe, January the 6th, 2002, involved both cocaine

16  and methamphetamine, and that's set forth in paragraph 10 of

17  the presentence report.

18      Paragraph 11 of the presentence report indicates that

19  between August 2021 and January 7th, 2022, Mr. Hunt

20  distributed at least 500 grams but less than 1.5 kilograms of

21  methamphetamine.  So that's amply supported by the presentence

22  report.

23      There are no upwards or downwards adjustments to the

24  guidelines.

25      Is the government moving for the full three points

1  for acceptance?

2       MR. ADAMS:  Yes, sir.

3       THE COURT:  The Court will grant the full measure of

4  acceptance of responsibility, and I find the total offense

5  level to be a 27.

6       Now, Mr. Hunt is 28 years old, a high school

7  graduate, but he's in Criminal History Category III based on

8  these convictions:

9       Paragraph 35 of the presentence report reflects a

10  2015 conviction for assault and battery in the General

11  District Court of Roanoke City.  He received a fine.  For that

12  he gets one criminal history point.

13       Paragraph 36, 2015 conviction for DWI, again Roanoke

14  City General District Court.  He received a 30-day suspended

15  sentence.  One criminal history point.

16       Paragraph 37, 2019 assault and battery and

17  brandishing, Roanoke City Juvenile Domestic Regulations Court.

18  He got ten days on the assault and battery and 30 days on the

19  brandishing.  One criminal history point.

20       Paragraph 38, 2020 possession of controlled

21  paraphernalia.  It was a felony and he received 12 months

22  suspended.  One criminal history point.

23       Paragraph 39, yet another assault and battery --

24       MR. BRAFORD:  Your Honor, just for purposes of the

25  record, the paraphernalia, what he ultimately was convicted of

1  was a misdemeanor.

2          THE COURT:  He was charged with a felony in circuit

3  court and it pled down to a misdemeanor.

4          MR. BRAFORD:  Yes, Your Honor.

5          THE COURT:  Yeah.  That's why he only got one point

6  for that.

7          You're absolutely right, Mr. Braford.  Thank you for

8  your help with that.

9          Paragraph 39, yet another assault and battery, 2022.

10  He received a 12-month sentence but it was suspended after ten

11  days, and that was in Salem Circuit Court.  He received one

12  criminal history point for that.

13          Paragraph 40, eluding, 2022, Roanoke City General

14  District Court.  That involved a dirt bike and him running

15  away when the police stopped him.  He received a fine for

16  that.  One criminal history point.

17          But because so many of these are misdemeanors,

18  they're not all countable.  The Court can count a maximum of

19  four criminal history points for these convictions.  However,

20  he was under a criminal justice sentence at the time of the

21  offense, so he gets two additional points.

22          That puts him in a criminal history score of 6.  A

23  criminal history score of 6 puts him in Criminal History

24  Category III.

25          Offense level 27, Criminal History Category III puts

U.S.A. v. Hunt - 2/10/2023

1  his guideline range at 87 to 108 months.

2          Any objection to the Court's calculation of the

3  offense level, the criminal history category, and guideline

4  range from the government?

5          MR. ADAMS:  No, Your Honor.

6          THE COURT:  From the defense?

7          MR. BRAFORD:  No, Your Honor.

8          THE COURT:  Okay.  Now, I have read the -- there's

9  also provided for, and I don't know whether this has been

10  administratively handled or whether it needs to be in an order

11  of forfeiture, but there was $4,890.

12          Do you know what I need to do with that, Mr. Adams?

13          MR. ADAMS:  Your Honor, you will need to include the

14  forfeiture in your oral announcement of sentence and the

15  written judgment of conviction.

16          THE COURT:  Okay.  I'll do that.

17          Now, I've read the presentence report.  I've read the

18  sentencing memos, and I appreciate them.  I read the letter

19  from Mr. Hunt's mother, Tia Hunt.  I read the note from his

20  nephew.  I read the long letter from his cousin, and the note

21  from his grandmother as well, and I appreciate those.

22          MR. BRAFORD:  Judge, and I don't mean to interrupt,

23  but I was incorrect to say it was his nephew.  It is actually

24  his niece.

25          THE COURT:  Okay.  You said it was his nephew in the

U.S.A. v. Hunt - 2/10/2023

1  brief.

2          MR. BRAFORD:  I did, Judge.

3          THE COURT:  I did read it.  And so that's his niece?

4          MR. BRAFORD:  Yes, Your Honor.

5          THE COURT:  I apologize for that.

6          MR. BRAFORD:  Judge, that's completely on me.

7          THE COURT:  Does either side wish to put on any

8  evidence at this sentencing?

9          MR. ADAMS:  None from the government, Your Honor.

10          THE COURT:  Mr. Braford?

11          MR. BRAFORD:  Your Honor, I have no evidence.  I

12  would ask the Court to recognize that the back is pretty full

13  of family members, including his mother, his two brothers, and

14  lots of other family members that I don't know who they are.

15  But I ask the Court to recognize that he has family support

16  here.

17          THE COURT:  Yes, he certainly does have family

18  support here.  Thank you.  And I know for the folks who wrote

19  letters and the folks who are here, it's very important for

20  Mr. Hunt to know he has this support now, while he's in the

21  Bureau of Prisons, and, really importantly once he gets out

22  and restarts his life.

23          Okay.  Let's hear argument from the government,

24  please.

25          MR. ADAMS:  Your Honor, as set forth in the

1  government's sentencing memorandum, obviously the nature and

2  circumstances of this offense are troubling in some regards,

3  primarily the fact that on just two occasions, on back-to-back

4  deals, he was selling over 100 grams of methamphetamine, and

5  he's selling to an individual who he had a prior history of

6  dealing with.  So the quantity of drugs, the nature of his

7  distribution, it is serious.

8       Methamphetamine is also a serious substance.  It's a

9  deadly substance in many regards.  It's quite a detriment to

10 its user's health, particularly over a long period of time.

11 So what Mr. Hunt was doing back in 2021 was aggravating for

12 sure -- 2022, I should say.

13      Now, of course, he was not armed and didn't appear to

14 be a major trafficker, somebody who was managing others, doing

15 those sorts of things, and so we're looking at the safety

16 valve -- there was no violence or credible threats of

17 violence, so we're looking at some of the safety valve

18 characteristics that he ultimately did not qualify for.

19      There's still some mitigation in terms of the nature

20 and circumstances of the offense; although, it was still quite

21 serious.  Perhaps what's also serious about it is that he

22 committed this offense while being out on bond for a state

23 offense.  And that sort of segues into his criminal history.

24      THE COURT:  Well, and he gets tagged two points for

25 that in his criminal history calculation, because he was on

U.S.A. v. Hunt - 2/10/2023

1  bond for the state offense.

2          MR. ADAMS:  So, yes, he does.  And additionally,

3  though, when we talk about his criminal history, while it may

4  not have involved narcotics, it's been consistent in recent

5  years, and it's assaultive behavior.  It's assaultive

6  behavior, and some of it involves the mother of his child.

7          THE COURT:  And there's at least three of those

8  occasions, when I was reading the presentence report, that

9  involved one woman.

10          MR. ADAMS:  That's right.  That's right.  So while

11 not excusable, there's some people who just don't get along,

12 and it's unfortunate and it's not necessarily uncommon, but

13 that doesn't make that conduct any better.  It is still part

14 of the defendant's history and characteristics that this Court

15 has to consider when imposing a sentence in this case.

16          Some of those allegations involved the possession of

17 a firearm, and so it's somewhat surprising here that his

18 conduct here did not involve a firearm.  Thankfully it didn't,

19 because we all know the dangers that occur when drug dealers

20 possess firearms.

21          But, nevertheless, he has a violent criminal history

22 in that regard, but he served very little jail time because of

23 it.  It did, as the Court recognized, involve largely one

24 person whom he happens to share a child with.  So despite the

25 serious nature of that conduct, again it resulted in very

U.S.A. v. Hunt - 2/10/2023

1  little jail time.

2          And his involvement in narcotics appears, at least on

3  this level, appears to have been rather sudden.  He certainly

4  had a history of drug use.  He had the prior distribution, the

5  prior felony reduced down to a misdemeanor, but it's not like

6  he was a long-term trafficker of serious narcotics when this

7  all came about.  But he stepped in it, he certainly did, and

8  this is certainly serious conduct that needs to be punished in

9  that manner.

10          When the government was considering how to enter into

11  plea negotiations in this case and thinking about all the

12  mitigating factors and the aggravating factors, ultimately,

13  before writing the sentencing memo, I figured this is going to

14  be easy.  I'm just going to say 87 months.  The conduct is

15  bad, the history is bad, the range accompanies what we think

16  is mitigation.

17          And then it's not always that you get to read the

18  defense sentencing memo first.  Mr. Braford filed his a few

19  days before I was able to write mine and I took time to read

20  it.  I thought it was good.  I thought he really pointed out

21  some things about Mr. Hunt that aren't always known to the

22  government.  That's why the Court has to make that

23  individualized assessment here today.  And I thought he

24  pointed out some positive things about him.

25          One, it might explain why he himself has committed

1  acts of domestic violence, because he had to witness them

2  himself.  I think research has shown, and I'm not saying that

3  I've read it, but I feel like I've heard it on a regular basis

4  that those who've witnessed it tend to have a proclivity to

5  get involved in it themselves.

6       He seems to be an individual who was involved in his

7  son's life.  Despite all of his differences with his child's

8  mother, he still saw his son on a regular basis.  The letter

9  that was written by one of his family members talked about

10 when he got out on bond his child coming to see him and how

11 wonderful that was.  It speaks well of Mr. Hunt in that

12 regard.

13      And so all of a sudden 87 months, while that could

14 still be an appropriate sentence given all the facts and

15 circumstances in this case and the nature of the parties'

16 agreement, the government started thinking, well, you know,

17 there's some other mitigating factors in play here too.

18      Ultimately, however, the aggravating factors in this

19 case call for a sentence, in the government's estimation, that

20 should go above the mandatory minimum 60 months.  He did deal

21 significant quantities, he does have a prior criminal history,

22 he did this while out on bond.  And while his violations while

23 out on federal bond weren't exactly the most aggravating in

24 the world, it still didn't quite show that he had fully

25 grasped the picture of his conduct and what was going on.

U.S.A. v. Hunt - 2/10/2023

1  Maybe it was defeatist in a way, and perhaps he thought,

2  "Well, I'm caught, I'm going to jail," and perhaps "I know

3  what's coming."  And that's a sentiment shared by a few folks.

4          But when we're thinking about whether or not he

5  should get the mandatory minimum or something above that, the

6  government points to those factors in support of its

7  recommendation that the sentence in this case should be no

8  less than 72 months.

9          Thank you, Your Honor.

10         THE COURT:  Thank you, Mr. Adams.

11         Let's hear from Mr. Braford.

12         MR. BRAFORD:  Thank you, Your Honor.  May it please

13  the Court.  Judge, as I pointed out in my sentencing

14  memorandum, Mr. Hunt is still a relatively young man, 28 years

15  of age.  He has an eight-year-old son that lives with the

16  child's mother.  He was a very active father of his child up

17  until the time he was incarcerated; has maintained contact, to

18  the extent that he can, while incarcerated.  Although, he

19  obviously doesn't want to expose his child to more than he

20  needs to be exposed to.

21         To a certain extent, that's going to be the child's

22  life now, because he is going to be incarcerated for at least

23  five years; we know that.  And I think when you hear from

24  Mr. Hunt in his allocution you're going to understand that he

25  owns that, he recognizes that, he takes full responsibility

U.S.A. v. Hunt - 2/10/2023

1   for that.

2          Judge, I think it's important to look at where

3   Mr. Hunt came from.  I point out a lot of factors in the

4   memorandum.  His mother and father were together as a couple.

5   They're not married to each other.  His father was in and out

6   of custody for much of his life.  Nonetheless, Shakeem, when

7   you talk to him, says that his father is probably the biggest

8   person in his life.  They were inseparable.  And so like so

9   many people in our community who fell victim to COVID, his

10  father passed away and succumbed to COVID.  And that all

11  happened shortly before all this began, this criminal conduct

12  that led to the charges and the conviction here today.  It is

13  certainly not an excuse, but it does lay the background.  It

14  lays the framework.  And, again, I think you'll hear from

15  Mr. Hunt today talking about that and about what's happened in

16  his life.

17         Mr. Hunt recognizes he's going to be away.  His child

18  is eight years old right now.  He recognizes that unless he

19  gets into the intensive drug treatment program and knocks a

20  year off the back end, he's going to be in for five years at a

21  minimum, less any good time that he gets, up to 87 months

22  under the plea agreement, less any good time.

23         He obviously is requesting that the Court impose the

24  60-month mandatory minimum because he wants to be an involved

25  father.  I think one of the most important things I pointed

U.S.A. v. Hunt - 2/10/2023

1  out in the memorandum is that up until the time he was

2  incarcerated, he was paying his child support.  That shows

3  he's a responsible person.  That shows that he knows what he

4  has to do.

5       His hope is to get a CDL.  He also would like to get

6  more education while he's incarcerated, like to take advantage

7  of all the opportunities he might have through the Bureau of

8  Prisons.

9       Judge, I pointed this out before, but you look back

10 in the back, it is very few times I've stood in this court for

11 sentencing where I've had somebody that has had that many

12 people supporting him from the family.  I also talked to his

13 mother today; she indicated that the grandmother would have

14 been here but she's been sick.  There are other people that

15 wanted to be here.  I think realistically but for everything

16 going around in the community that whole back would have been

17 filled with family supporters.

18      I bring that up not to show so much what happens in

19 other cases, but to show in this case, when Mr. Hunt gets out,

20 in addition to the services that will be provided by probation

21 and by the court, he has got his family here.  They're not

22 turning their back on him today.  They're not going to turn

23 their back on him while he's at the Bureau of Prisons.  And

24 most importantly, they're not going to turn their back on him

25 when he gets out and is struggling to keep his nose clean.  So

U.S.A. v. Hunt - 2/10/2023

 1  I ask the Court to consider all that.

 2          We ask the Court to impose the mandatory minimum.

 3  I'm not going to debate with Mr. Adams.  He is perfectly

 4  right, what happens in this community with drug trafficking is

 5  horrendous.  It is a terrible blight on our society.  But I

 6  think the 60-month mandatory minimum is sufficient to punish

 7  him.  He's still a young man and he has got a chance to turn

 8  his life around.

 9          Judge, we would ask the Court to make a

10  recommendation to the Bureau of Prisons for the intensive drug

11  treatment program.  He doesn't have the same drug history that

12  a lot of my clients have coming before the Court.  But I think

13  that the one good thing I can say for him -- well, it's not

14  really a good thing that I can say for him.  The one thing I

15  can say that really supports his need for the drug treatment

16  is he was under the supervision of this court, he tested

17  positive for marijuana the day that he entered his change of

18  plea.  That shows how much he needs help.  Because if you're

19  under supervision, unless you're given the skill set necessary

20  to change your ways, you go back to what you're used to, and

21  you go back to using, which is what he did when he used

22  marijuana.  Thank goodness it wasn't something more --

23          THE COURT:  Is that why he was taken into custody?

24          MR. BRAFORD:  Yes, sir.  Yes, sir.

25          THE COURT:  Okay.  I didn't remember that.

U.S.A. v. Hunt - 2/10/2023

1        MR. BRAFORD:  He tested positive earlier that day.

2        THE COURT:  But I did note that he was taken into

3  custody on the day of his plea.

4        MR. BRAFORD:  And that's the reason you took him into

5  custody, or at least it was a major factor in it, Judge.

6        THE COURT:  Oh, it certainly is, yeah.

7        MR. BRAFORD:  Judge, we also ask that the Court

8  recommend to the Bureau of Prisons that he be housed somewhere

9  locally, to the extent possible, Petersburg or North Carolina.

10  He indicates he does not want to go to West Virginia.  I don't

11  know what's wrong with West Virginia.  He may not be a

12  Mountaineer fan.  I don't know, Judge.

13        But, Judge, we believe, in all seriousness, that 60

14  months is sufficient in this case to punish him.  He is not a

15  man of means, so I don't think a fine is appropriate in this

16  case.  Obviously, the special assessment is required and

17  mandatory.  But, Judge, that would be our position.

18        THE COURT:  Thank you, Mr. Braford.  I appreciate

19  that.

20        Does your client want to come forward and allocute or

21  would he rather stay there?

22        MR. BRAFORD:  Judge, he can step forward.

23        THE COURT:  And you can take your mask off if you

24  would like.

25        THE DEFENDANT:  How are you doing today, Your Honor?

U.S.A. v. Hunt - 2/10/2023

1          THE COURT:  I'm good.  Thank you.  How are you?

2          THE DEFENDANT:  I'm fine.

3          Judge Urbanski, I'm writing this letter to you today

4  regarding of the fact I made some bad choices in my life.  I

5  know I'm wrong for making the mistakes I made to the

6  community, but not only am I sorry for that, I let the most

7  important people down for my actions.  I just want to say I'm

8  sorry to my son and my family.  They're the main ones hurt.  I

9  know no one is perfect, but at least I'm man enough to own up

10  to the damage I caused them.

11          I know deep down inside this is not the lifestyle I

12  chose to live, but when you're dealing with a lot of problems,

13  you're not thinking what the outcome could be.  So I did what

14  I had to do so things would be better for me and mines.  I

15  wasn't thinking about the consequences I would face.

16          I had so much going on, I began to stress.  I had a

17  lot on my plate at the time.  I couldn't work a decent job

18  because everyone was turning me down because of my background.

19  Things started to get rough for me.  My son's mother was still

20  being dramatic -- my son's mom was being a drama queen, to me

21  losing my father, all happened to me at once.

22          I was beginning to lose my mind, so I figured if I

23  could make some fast money it would take away my problems and

24  make me feel happy again, I could help my mom out with

25  anything she had to take care of.  Plus, I wanted to do more

U.S.A. v. Hunt - 2/10/2023

1   things with my son and be able to pay my child support.

2          I accept the fact that I need to be punished, and I

3   take full responsibility for selling drugs.  But I don't want

4   to be labeled -- I mean, I don't want to be judged as a drug

5   dealer because that's not me or my character.  I'm a family

6   man that just wanted a better life for me and my siblings.

7          It hurts me to my heart because I have to be away

8   from my family, and I don't take -- and I can't take my son or

9   my niece to Disney World like I promised them.  Hopefully, I

10  will still get to accomplish that if they still -- hopefully,

11  I'll get to accomplish that if they still young when I make it

12  out of prison.

13         I wish things didn't have to be this way, but no one

14  is perfect.  No one is perfect.  Everyone makes mistakes.  But

15  I know I learned from this journey.  I wont be a fool again to

16  leave my family's side, because they the ones that matters the

17  most to me.

18         I understand -- I hope you understand where I'm

19  coming from.  I hope you understand where I'm coming from, and

20  I apologize for my poor decisions I made to the community,

21  especially my family is affected.

22         Once again, I'm sorry.  I'm a better man now than

23  before, and I hope my outcome is not too bad so I can get back

24  home to being a great father and an uncle to my children.

25         Thank you for giving me the opportunity to express

U.S.A. v. Hunt - 2/10/2023

1  myself.  I really appreciate that so much, Your Honor.  I hope

2  all is well to you, and have a blessed day.

3       THE COURT:  Thank you.  Thank you, Mr. Hunt.

4       You and Mr. Braford may return back to counsel table.

5  I appreciate those heartfelt words.  And if you-all would

6  remain standing, please.

7       The Court starts each sentencing, as I'm required to

8  do under law, by considering the advisory sentencing

9  guidelines.  In this case, the advisory sentencing guidelines

10 call for a sentence of 87 to 108 months.

11      I have determined that for good reasons, many of

12 which have been stated here, that the plea agreement in this

13 case of between 60 to 87 months makes good sense.

14      One of those things that calls for the reduction

15 below the guidelines is Mr. Hunt's age, that he was not a

16 manager of others, he was a relatively small-scale drug

17 dealer, there was no suggestion that guns were involved in his

18 drug dealing, and there are no incidents of violence involved

19 in his drug dealing.

20      He has struggled with some mental health issues

21 throughout his life, particularly after the loss of his

22 father.  And I'm sorry for that, Mr. Hunt.

23      THE DEFENDANT:  Thank you.

24      THE COURT:  He's tried to be an active father for his

25 son, and I think that speaks extraordinarily well of Mr. Hunt.

1   And it's a great point that Mr. Braford made that he was

2   paying his child support.  You don't often see that.  You just

3   don't often see folks who are in front of me on charges like

4   this who actually have stepped up and were paying child

5   support.  So one might think that's not a big deal, but it is

6   a big deal because it does show some sense of responsibility.

7          So I think there's plenty of good reason to vary down

8   from the guidelines into the range that the parties have

9   agreed upon.  So where in that range should the Court sentence

10  Mr. Hunt?

11         In *Gall versus United States*, the Supreme Court said

12  that the district judge in imposing a sentence must make an

13  individualized assessment based on the facts presented.

14         In *Koon versus United States*, the Supreme Court

15  teaches that it has been uniform and constant in the federal

16  judicial tradition for the sentencing judge to consider every

17  convicted person as an individual and every case as a unique

18  study in human failings that sometimes mitigate, sometimes

19  magnify the crime and punishment to ensue.

20         So we start with the guidelines, and then we go from

21  there to the factors under 18, United States Code,

22  Section 3553(a), which are framed to reflect the goals of

23  punishment.

24         One of the things that's interesting to me, and I

25  appreciate Mr. Adams doing this, is he attached the

1  statistical data from the Sentencing Commission, the JSIN data

2  that is now available on the Sentencing Commission's website.

3  And even though the guidelines are 87 to 108 for this, in 169

4  cases that were surveyed from fiscal years 2017 to 2021 for

5  people who had these guidelines, 27 and a III, the average

6  sentence was 84 months, and the median sentence was 80 months.

7  Each of those below the guideline range.

8         So I think that's interesting, you know, and I

9  appreciate that data.  I think that data is useful.  What it

10  does is it provides the Court not just what the Sentencing

11  Commission believes the guidelines should be, but what the

12  actual sentences imposed around the country are for crimes

13  like this.  That data is helpful.

14         So I start with those numbers and then I go to the

15  factors under 18, United States Code, Section 3553(a), and the

16  first one is the nature and circumstances of the offense.

17  Well, Mr. Adams is right, this is a significant amount of

18  methamphetamine.  And methamphetamine destroys lives; it just

19  does.  It's a terrible substance.  It's incredibly difficult

20  to break a methamphetamine addiction, and it is one that just

21  destroys lives.

22         And, in fact, Mr. Hunt, it has put a serious hurt on

23  your life, because you're here in federal court facing a

24  significant drug-dealing sentence because of methamphetamine.

25  It's a terrible substance.

U.S.A. v. Hunt - 2/10/2023

1          So that is a crime for which the Court is required to

2   impose a significant penalty.  And, of course, Congress has

3   indicated that for dealing this amount methamphetamine the

4   lowest sentence I can impose is 60 months, or five years, and

5   I can impose up to -- but for this plea agreement, I could

6   impose up to 40 years.

7          I turn from there to the next factor, and that is

8   consideration of the history and characteristics of the

9   defendant.  Well, we have a young man who is a high school

10  graduate who, during high school, played sports.  I think he

11  broke his leg and got hurt, probably couldn't continue with

12  football.  He learned how to do bodywork at school, and he did

13  some work with his dad repairing houses and flipping houses.

14  He does have some skills.  He's got some skills that he could

15  use in the workforce.

16          He's a young man, 28 years old.  He's got a boy he's

17  devoted to, and he's paying child support.  And he obviously

18  has a great deal of family support, and that's really --

19  that's important.

20          You know, in your allocution, Mr. Hunt, you talked

21  about letting people down.  I mean, the whole theme of your

22  allocution was, "I let people down.  I'm a family man, and I'm

23  not going to do this again.  I'm going to learn from my

24  mistakes," and I hope and pray that happens.

25          Because there's one thing I want you to take away

1    from this sentencing, and that is this:  What has happened to

2    you to land you in that green-striped suit here in federal

3    court being sentenced does not have to define the rest of your

4    life.  You can learn from this.  You can get some vocational

5    training and other training in the Bureau of Prisons, get

6    out -- and I am going to recommend the Residential Drug Abuse

7    Program, the RDAP program.  You've been -- according to the

8    presentence report, you've been using marijuana on a daily

9    basis, starting in middle school, and were using it on a daily

10   basis at the time of your arrest.  And I think you could

11   benefit from that addiction program.

12           But this sentence, this conviction doesn't define who

13   Shakeem Hunt is.  One of your family members, your cousin I

14   think, said, "No, it's 'Shaky.'  It's not Shakeem.  It's Shaky

15   Hunt or Shaky" [pronouncing].  I don't know; I just saw what I

16   saw.  It doesn't have to define you.

17           You can do better than this, okay?

18           THE DEFENDANT:  Yes, sir.

19           THE COURT:  You're a smart young man with family

20   support behind you.  You can do better than this.  And I urge

21   you that as you leave here today, I want you to think about

22   one thing, okay?  The judge said this doesn't have to define

23   me and that you can do better, okay?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  And I'll be pulling for you.  Over the

U.S.A. v. Hunt - 2/10/2023

1   time of your incarceration, I'll be thinking about you and

2   pulling for you and hoping for the best.  And when you get

3   out, come see me and we'll go have lunch and see how you're

4   doing, okay?

5           THE DEFENDANT:  Yes, sir.

6           THE COURT:  All right.  So there are some -- there is

7   also one component of all of this, is there is some history of

8   depression and some history of mental health issues, and that

9   was compounded by the loss of the most important person in

10  Mr. Hunt's life, and that was his dad, during the pandemic.

11  And there's no question that he likely, as reflected in the

12  presentence report, self-medicated with marijuana and alcohol,

13  and really went into a downward spiral when that happened.

14  It's not to excuse that behavior, but it just helps to explain

15  it.

16          I move from there to -- you know, this crime didn't

17  involve violence, and you didn't have a gun, but I am a bit

18  troubled by the fact that there are four, I think,

19  assault-and-battery convictions and they're all in the

20  domestic setting, and at least one of them involved

21  brandishing.  Well, three assault-and-battery convictions.

22  Sorry.  And one involving brandishing, and that concerns me.

23          And because of that and because of the history of

24  depression, I'm also going to recommend to the Bureau of

25  Prisons that in addition to the drug counseling I want

U.S.A. v. Hunt - 2/10/2023

1  Mr. Hunt to get mental health -- a mental health assessment,

2  mental health treatment and counseling.  And I really want him

3  to see if the Bureau of Prisons can give him some help on

4  anger management, because that's a theme that is throughout.

5  This domestic assault, the crimes that -- you had three prior

6  convictions for that, and that is something that we ought to

7  try to get you some skills in the Bureau of Prisons to cope

8  with that so it doesn't happen again.  Okay?

9        I move from there to consideration of the other

10 factors under the statute, and that is the need for the

11 sentence imposed to reflect the seriousness of the offense,

12 promote respect for the law.

13       You've been on a road of law-breaking, and you

14 haven't spent much time in jail, hardly any.  You've spent

15 more time on this than you have ever spent in jail, right?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  I think you spent 40 days in jail before

18 on -- in 2019 as a result of the brandishing and the assault

19 and battery.  But you haven't spent any other time in jail.

20       Well, regardless of the sentence here, this is a

21 serious chunk of time, right?

22       THE DEFENDANT:  Yes, sir.

23       THE COURT:  It is a serious chunk of time.  And every

24 day that you're incarcerated is a day you're away from your

25 son and your family, and that's a hard thing.

1           So the sentence needs to reflect the seriousness of

2   the offense.  It needs to put you on a path out of

3   law-breaking and to promote respect for the law, to provide

4   just punishment, to keep you from committing additional

5   crimes, and to keep others from getting involved in this.

6           I know it's -- I cannot tell you the number of times

7   I've heard people say, "I've made bad choices.  I was just

8   trying to make some easy money," right?  Well, that easy money

9   doesn't seem so easy today, does it?

10           THE DEFENDANT:  No, sir.

11           THE COURT:  No, it doesn't.  In fact, it's really

12   hard money now because the consequences of that are really,

13   really, really harsh.

14           I'll bet you never thought for one minute you would

15   be in federal court facing this kind of time.

16           THE DEFENDANT:  No, sir.

17           THE COURT:  Not for one minute.

18           THE DEFENDANT:  No, sir.

19           THE COURT:  I know.  I've heard that over and again.

20           The sentence needs to protect the public from further

21   crimes of the defendant, and it will while you're

22   incarcerated.

23           I think considering all these factors here,

24   particularly the nonviolent nature of the crime, the lack of

25   involvement of a gun, the family support, the prior criminal

U.S.A. v. Hunt - 2/10/2023

1  history, mental health issues, the addictive use of marijuana,

2  I think the -- I think this:  The defendant is 28 years old, a

3  criminal history category III.  Although a criminal history

4  category III, he spent very little time in custody.  He was

5  charged with some drug dealing and he was charged with a

6  felony, but it got reduced to misdemeanor possession of drug

7  paraphernalia for which he received a 12-month suspended

8  sentence; several misdemeanors and many of them involving

9  assault and battery; one prior misdemeanor brandishing

10  conviction.

11       Graduated from high school.  He's got some job

12  skills.  He's working on cars and flipping houses.  Good

13  family support, witnessed by the letters from the grandmother,

14  mother, cousin, and niece.  Many of the letters spoke of the

15  important role of the defendant as a father to his

16  eight-year-old son.

17       There are some mental health issues, depression over

18  the loss of his dad, self-medicating with marijuana.

19       Again, no guns or violence involved in his drug

20  dealing.  I would feel differently about this case had guns or

21  violence been involved.

22       I accepted the Rule 11(c)(1)(C) plea agreement, and

23  I'm going to vary downwards in this case to a sentence of 60

24  months, at the low range.  I believe that sentence is

25  sufficient but not greater than necessary in this case.

U.S.A. v. Hunt - 2/10/2023

1          I'm going to recommend residential drug abuse

2    counseling program and mental health counseling for Mr. Hunt.

3          I understand the government's argument and I

4    appreciate it.  I simply think that 60 months is sufficient.

5          I'm going to put you on four years of supervised

6    release.  While you're on supervised release, you may not

7    commit another federal, state, or local crime;

8          You cannot unlawfully possess a controlled substance;

9          You must refrain from any unlawful use of a

10   controlled substance;

11         You must submit to drug testing, and you'll be tested

12   at least once within 15 days of release, and at least two

13   periodic drug tests thereafter;

14         You must cooperate in the collection of DNA by

15   probation.

16         So you'll be on -- there's two parts to this

17   sentence:  Five years in federal prison, and you'll get credit

18   for the days that you've already spent, followed by four years

19   of supervised release.  You're going to be under the

20   supervision of the federal probation officer while you are --

21   and you see what happens when you violate the rules, right?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  You came in here, we did your guilty plea

24   hearing, you violated the rules, you tested positive, we put

25   you in jail, right?

U.S.A. v. Hunt - 2/10/2023

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  That will happen again when you are on

3   supervision.  Every day we have folks who are on supervision,

4   some do well, some don't do so well.  And I see the folks that

5   don't do so well.  And one of the things I'm required to

6   consider when I see folks on supervision and they've messed

7   up, one of the things that I'm required to consider in the

8   guidelines is if I gave them a break on their sentence the

9   first time.  Okay?

10         So you get out, you mess up, if I gave a break below

11  the guidelines, which I am doing in this case, then I have to

12  maybe impose a greater sentence when you get out.  That's what

13  the guidelines suggest.

14         So take advantage of this lower sentence and don't

15  put yourself in a situation where you can get a higher one,

16  okay?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  I'll remember you.  And hopefully I'll be

19  around, hopefully I'll be around when you get out of the

20  Bureau of Prisons and you're doing well.  And I hope I'm not

21  here if you're doing badly, okay?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  You must report to the probation office

24  in the federal judicial district where you're authorized to

25  reside within 72 hours of your release from imprisonment.

U.S.A. v. Hunt - 2/10/2023

1  After initially reporting to probation, you'll receive

2  instructions from the Court or probation about further

3  reporting.

4          You can't leave the judicial district where you're

5  assigned without getting permission from the Court or the

6  probation officer.

7          You must truthfully answer the questions asked by the

8  probation officer.

9          The place where you're living must be approved by the

10 probation officer, and you can't leave there without providing

11 some written notice.

12         Probation is going to be allowed to visit you, and

13 you must cooperate in those visits.

14         You're going to be required to work at a place

15 approved by probation.

16         You can't communicate or interact with someone that

17 you know is engaged in criminal activity.

18         If you are arrested or questioned by law enforcement,

19 you must notify probation within 72 hours.

20         Importantly, you cannot own, possess, have access to,

21 touch a firearm, ammunition, destructive device, or dangerous

22 weapons, and you cannot live in a home where any of those are

23 present.

24         You can't work as a confidential informant for law

25 enforcement without the approval of the Court.

U.S.A. v. Hunt - 2/10/2023

1        You must follow the instructions of probation.

2        Following your release from imprisonment, the Court

3   will evaluate your status and determine whether

4   after-incarceration drug rehabilitation and mental health

5   treatment are necessary and appropriate.  If additional

6   rehabilitation is deemed appropriate, you shall participant in

7   a program designated by the Court upon consultation with

8   probation until such time as you satisfy the requirements of

9   the program.

10       You're going to be subject to warrantless search and

11  seizure by the probation officer to ensure compliance with

12  these conditions.  And the probation officer may, upon

13  reasonable suspicion that there's a violation of these

14  conditions, conduct a warrantless search of your person,

15  property, house, residence, vehicle, papers, those kinds of

16  things.

17       I'm going to impose a $100 mandatory special

18  assessment.  That's due and payable immediately.

19       I'm going to impose a $250 fine.  It's well below the

20  guidelines range.  But I impose a fine in that range for two

21  reasons:  One, you don't have the ability to pay any more;

22  and, two, I want to impose some monetary penalty so that

23  you'll qualify for the Inmate Financial Responsibility Program

24  while you're in the Bureau of Prisons and you can get

25  employment and some vocational skills.

1          The $100 is due and payable immediately.  The $250 is

2     payable as follows:  Commencing 60 days after the date of

3     judgment $25 a month or 25 percent of your prison income,

4     whichever is less, during the course of your imprisonment.  If

5     there's any left when you get out, $25 a month during the

6     period of your supervised release until the $250 is paid.

7          I'm going to impose restitution in the amount of --

8     no, not restitution.  Excuse me.  There is forfeiture that the

9     Court is going to order -- excuse me.  I used the wrong word.

10    Forfeiture that the Court is going to order in this case in

11    the amount of $4,890, and I'll enter an order of forfeiture to

12    that effect.

13         Ms. Falatic, any other conditions that you think that

14    I might have missed?

15         THE PROBATION OFFICER:  No, Your Honor, you covered

16    them.

17         THE COURT:  How about from the government or the

18    defendant?  Any other conditions that you think the Court

19    needs to either add or that you have some concern about?

20         MR. ADAMS:  No, Your Honor.

21         MR. BRAFORD:  No, Your Honor, no conditions.

22         Judge, I would ask the Court to make a recommendation

23    of either Petersburg --

24         THE COURT:  I'm going to do that.

25         MR. BRAFORD:  Yes, sir.

U.S.A. v. Hunt - 2/10/2023

1          THE COURT:  I'm going to do that.

2          In addition to making a recommendation for RDAP and

3   mental health treatment and counseling, I'm going to recommend

4   that he go to Petersburg or a facility in North Carolina

5   consistent with his security classification.

6          MR. BRAFORD:  Your Honor, one thing, if I might.  In

7   talking to Mr. Hunt, he had indicated that previously he had

8   not been vaccinated for COVID.  He would now like to be

9   vaccinated, and hopefully the marshals can make that known to

10  the medical at the Roanoke City Jail.

11         THE COURT:  I'll e-mail the marshal when I leave here

12  today and let him know that Mr. Hunt wants to be vaccinated,

13  and I'll ask him to look into that.

14         MR. BRAFORD:  Thank you, Your Honor.

15         THE COURT:  Yeah, you need to get that vaccine,

16  Mr. Hunt, because that -- I'm sorry you haven't gotten it

17  before now, but that vaccine can be very helpful.  I think

18  I've had either four or five shots.  So it's something that

19  you need to get.  I'm old so I can get more shots.  But it's

20  something that you ought to do, and if you're willing to do

21  that, then the -- I'll e-mail the marshal.

22         I'll copy both of you guys --

23         MR. BRAFORD:  Thank you, Your Honor.

24         THE COURT:  -- Mr. Braford and Mr. Adams, on my

25  e-mail expressing that interest.

1          All right.  Pursuant to the plea agreement in this

2    case the remaining counts, Two, Three, and Four, are hereby

3    dismissed.

4          Mr. Hunt, you've waived your right to appeal your

5    sentence.  That waiver is binding unless the sentence exceeds

6    the statutory maximum or is based on a constitutionally

7    impermissible factor.  If you undertake to appeal despite your

8    waiver, you may lose the benefits your plea agreement.

9          If a right of appeal does exist, a person who's

10   unable to pay the cost of appeal may apply for leave to appeal

11   without prepayment of such cost.

12         Any notice of appeal must be filed within 14 days of

13   the entry of judgment or 14 days of a notice of appeal by the

14   government.  If requested, the clerk will prepare and file a

15   notice of appeal on your behalf.

16         All right.  Mr. Hunt, do you have any questions for

17   the Court?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  All right.  I'm going to say this again,

20   and I want you to remember it:  This past conduct that's led

21   you to this day does not have to define the rest of your life.

22   You can do great things and I hope and pray that you do that.

23   Thank you.

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  We stand in recess.

U.S.A. v. Hunt - 2/10/2023

1     (Court recessed at 2:57 p.m.)

2               CERTIFICATE

3  I, Judy K. Webb, certify that the foregoing is a

4  correct transcript from the record of proceedings in

5  the above-entitled matter.

6

7  /s/  Judy K. Webb        Date:  3/25/2024